NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>UMAR ADEYOLA,<br><br>Defendant. | Criminal Action No. 21-897 (RK)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Umar Adeyola's ("Defendant") *pro se* Motion for Early Termination of Supervised Release (the "Motion"). ("Mot.," ECF No. 11.) The Government opposes the Motion. ("Oppo.," ECF No. 18.) For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

    From 2009 through 2014, Defendant engaged in schemes that defrauded both private insurers and the United States of hundreds of thousands of dollars. (Revised Presentence Investigation Report (Oct. 23, 2019), "PSR," ¶¶ 13–77.) At the time, Defendant was the founder and manager of the HEART Foundation, a non-profit organization, and the Heart Community Alliance, L.L.C. ("HCA"), a related for-profit organization. (*Id.* ¶¶ 15–16.) Both organizations held themselves out as providing mental health services to clients; in the case of the HEART Foundation, the clientele was specifically young people and their families. (*Id.*) In his role at these organizations, Defendant orchestrated the submission of fraudulent insurance claims to private insurers for services alleged to have been rendered by a Licensed Clinical Social Worker named Akmal Shareef. However, Mr. Shareef did not render many of the services claimed; he was even

hospitalized and later deceased for some portion of the claimed services. (*Id.* ¶¶ 29–71.) These false and fraudulent claims to private insurers totaled $262,861.75. (*Id.* ¶ 71.) Separately, pursuant to a grant program funded by the United States Department of Labor, Defendant, via the HEART Foundation, submitted fraudulent reimbursement requests for (i) goods and services that were never actually paid for by the HEART Foundation, and (ii) salaries of HEART Foundation and HCA employees who did not work on programs related to the grant. (*Id.* ¶¶ 72–75.) These false and fraudulent reimbursement claims resulted in the HEART Foundation receiving $135,739.32 from grant funds provided by the United States Department of Labor. (*Id.* ¶ 76.)

Defendant was indicted in the United States District Court for the Western District of New York on 48 counts. (ECF No. 2-1.) On April 18, 2018, Defendant pled guilty to one count of conspiracy to commit health care fraud pursuant to 18 U.S.C. §§ 1347, 1349. *United States of America v. Umar Adeyola*, No. 16-138, ECF No. 56 (W.D.N.Y.). Based on an offense level of 21 and a criminal history category of V,[1] the United States Sentencing Guidelines recommended an imprisonment range between 70 and 87 months. (PSR ¶ 107.) The Honorable Lawrence J. Vilardo, U.S.D.J. subsequently sentenced Defendant to a below-Guidelines sentence of 60 months imprisonment followed by a three-year term of supervised release. (ECF No. 2-2.)

A little over a year after he voluntarily surrendered to prison on January 11, 2019, Defendant, who suffers from progressive multiple sclerosis, filed a motion for compassionate release on April 6, 2020 given his serious health risks in light of the COVID-19 pandemic. *United States of America v. Umar Adeyola*, No. 16-138, ECF Nos. 88, 91, 93 (W.D.N.Y.). Judge Vilardo

---

[1] Defendant's criminal history category was the result of fraud-related crimes Defendant committed prior to the instant underlying offense: (i) he pled guilty in November 2001 to money laundering; (ii) he was convicted in November 2004 of criminal possession of a forged instrument and petit larceny; and (iii) he pled guilty in January 2009—when the instant underlying fraudulent scheme began—to false statements and wire fraud. (PSR ¶¶ 97–99.) He then received two additional criminal history points for committing the instant underlying offense while serving a term of supervised release. (*Id.* ¶ 101); *see* U.S.S.G. § 4A1.1(d).

ultimately granted Defendant's motion for compassionate release on July 14, 2020 and his remaining sentence of imprisonment was converted to a term of supervised release with the condition of home incarceration. *United States of America v. Umar Adeyola*, No. 16-138, ECF No. 129 (W.D.N.Y.) (noting this special term of supervised release was to last until April 14, 2023). The court ordered that Defendant's "previously imposed three-year term of supervised release [would] commence" after his special term of home incarceration ended. (*Id.*)

The case was transferred to the United States District Court for the District of New Jersey for supervision purposes on December 9, 2021 and reassigned to the Undersigned on August 3, 2023. (ECF Nos. 1, 7.) Defendant completed his special term of home incarceration on April 15, 2023 and is scheduled to complete his original three-year term of supervised release in April 2026. (*See* Oppo. at 3.)

With approximately 13 months left in his term of supervision, Defendant filed the present Motion on March 11, 2025. (Mot.) Defendant argues that the Court should terminate his supervised release early because (i) he has "fully complied with all conditions of his supervised release," (ii) he "is a PhD candidate, requiring extensive research and academic travel," (iii) his "multiple sclerosis is now well-managed," and (iv) he is categorized as "low risk" by the United States Probation Office and has "no history of violence, substance abuse, or public safety concerns." (*Id.* at 4.) In sum, Defendant seeks early termination of his supervised release because he has "demonstrated full rehabilitation, reintegration into society, and compliance with all legal obligations." (*Id.*) While the United States Probation Office does not oppose Defendant's Motion, the Government opposes the Motion because of (i) the nature and circumstances of Defendant's offense; (ii) "his serious criminal history documenting his commitment to fraud," and (iii) "the

3

benefits he has already received in terms of a below-guidelines sentence and his compassionate release." (Oppo. at 4.)

## II.  LEGAL STANDARD

A district court may terminate a term of supervised release any time after the expiration of one year of supervised release if the court is "satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. § 3583(e)(1). The court must consider the factors under 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide [the defendant] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7)). "A district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* District courts "are not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." *Id.* at 52–53 (cleaned up).

## III.  DISCUSSION

The Court has considered the statutory factors under 18 U.S.C. § 3553(a) and determines that terminating Defendant's supervised release is not appropriate. *See United States v. Sheppard*, 17 F.4th 449, 455–56 (3d Cir. 2021). The first factor weighs against terminating Defendant's supervised release. *See* 18 U.S.C. § 3553(a)(1). Defendant defrauded both private insurers and the

United States out of hundreds of thousands of dollars that were meant to go towards supporting important mental health work. Particularly concerning to the Court, Defendant repeatedly invoked the name of a hospitalized and subsequently deceased person as a cover for his fraudulent schemes. (*See, e.g.*, PSR ¶¶ 46–47.) What's more, these schemes were completed while Defendant was on supervised release after pleading guilty to wire fraud and false statements in the United States District Court for the Western District of New York. (*Id.* ¶ 99.)

The fact that Defendant served a term of imprisonment *below* the Sentencing Guidelines range also weighs against terminating his supervised release. *See* 18 U.S.C. § 3553(a)(3). During presentencing, the Sentencing Guidelines range for Defendant's conduct was between 70 and 87 months. (PSR ¶ 107.) Defendant was sentenced to only 60 months and served just a fraction of that—18 months—before being granted compassionate release. *United States of America v. Umar Adeyola*, No. 16-138, ECF No. 129 (W.D.N.Y.). Since Defendant already benefited from a significant downward variance in his sentence, the Court is not inclined to further reduce his sentence through early termination of his supervised release. *See United States v. Triplett*, No. 16-248, 2020 WL 6701023, at *4 (W.D. Pa. Nov. 13, 2020). A reduction would neither "reflect the seriousness" of Defendant's offense nor "promote respect for the law." 18 U.S.C. § 3553(a)(2).

There is no doubt that Defendant's academic efforts and full compliance to date with his conditions of supervised release are admirable. (*See* Mot. at 4.) However, his compliance "may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects." *United States v. Hall*, No. 05-367, 2025 WL 306537, at *3 (W.D. Pa. Jan. 27, 2025) (quotation omitted). Indeed, "mere compliance with the conditions of supervised release is generally insufficient to support early termination." *United States v. Desu*, No. 18-613, 2024 WL 3878748, at *3 (D.N.J. Aug. 20, 2024) (quoting

5

*United States v. Vasiliades*, No. 96-217, 2022 WL 3701963, at *3 (E.D. Pa. Aug. 25, 2022)); *United States v. Parrish*, No. 91-56, 2021 WL 5240146, at *3 (D.N.J. Nov. 10, 2021) ("A defendant's routine compliance with the terms of supervision, although commendable, is precisely what is expected of a defendant." (cleaned up)).

Further, the Court is mindful that Defendant completed the underlying fraudulent scheme while serving a term of supervised release and that he has a history of fraud-related crimes, one of which resulted in the revocation of a prior term of supervised release. (*See* PSR ¶¶ 97 (money laundering conviction, supervised release revoked), 98 (criminal possession of a forged instrument and petit larceny convictions), 99 (false statements and wire fraud convictions).) Thus, the Court is convinced that terminating Defendant's supervised release at this juncture is unwarranted. Defendant's Motion (ECF No. 11) is **DENIED**.

Accordingly, **IT IS** on this 3rd day of June, 2025,

**ORDERED** that Defendant's Motion for Early Termination of Supervised Release (ECF No. 11) is **DENIED**; and further

**ORDERED** that the Clerk of the Court is directed to **TERMINATE** the Motion pending at ECF No. 11; and further

**ORDERED** that the Clerk of the Court is directed to mail a copy of this Memorandum Order to Defendant's address on record via regular U.S. mail.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**